# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## BECKLEY DIVISION

DANNY ADDAIR, et al.

      Plaintiffs,

v.            CIVIL ACTION NO. 5:10-cv-00997

AMERICAN OPTICAL CORPORATION, et al.

      Defendants.

## MEMORANDUM OPINION AND REMAND ORDER

Pending before the Court is Plaintiffs Danny Addair and Tara Addair's Motion to Remand Case to Circuit Court of Wyoming County [Docket 42]. For the reasons set forth below, the Court **FINDS** that the non-diverse defendants were not fraudulently joined and that federal subject matter jurisdiction is therefore lacking. Accordingly, the Plaintiffs' motion to remand must be and hereby is **GRANTED**.

## I. BACKGROUND

On April 9, 2010, Plaintiffs filed this lawsuit in the Circuit Court of Wyoming County, West Virginia, alleging that Danny Addair contracted coal worker's pneumoconiosis from exposure to significant amounts of harmful dust while working in several mines between 1973 and 2003. (Docket 1-2 at 1, 3.) More specifically, the complaint alleges that Mr. Addair was injured because respirators designed to filter out harmful dust were defective, exposing him to submicron-sized dust particles, which led to his disease. (*Id.* at 3.) Plaintiffs named as defendants American Optical Corporation, the company that allegedly manufactured the defective respirators Mr. Addair used

during his employment, and four other companies that allegedly distributed the American Optical brand respirators used by Mr. Addair—Raleigh Mine and Industrial Supply, Inc., Eastern States Mines Supply Company, Crest Supply Company, Inc., and Fairmont Supply Company. (*Id.*) Three of the four companies that allegedly distributed defective respirators are organized under the laws of and headquartered in West Virginia (together the "distributor defendants"). (*Id.* at 3.) The fourth distributor, Fairmont Supply Company, is incorporated in Delaware, with its principal place of business in Pennsylvania. (*Id.* at 4.) American Optical Corporation ("American Optical") is incorporated pursuant to the laws of Delaware, with its principal place of business in Connecticut. (*Id.* at 1-2.) Plaintiffs are citizens of West Virginia. (*Id.* at 1.)

On August 6, 2010, American Optical removed this case to federal court, arguing that the distributor defendants were fraudulently joined by Plaintiffs to destroy federal subject matter jurisdiction. (Docket 1 at 5.) If true, federal jurisdiction is proper based on the diversity of citizenship between Plaintiffs and the remaining out-of-state defendants. In support of its removal, American Optical attached identical affidavits sworn to by employees of each of the distributor defendants, stating that the respective companies have no record of (1) purchasing any products from or transacting any business with the American Optical Corporation, or (2) distributing, supplying, or selling any products manufactured by American Optical to any of Mr. Addairs's employers. (Dockets 1-4, 1-5, 1-6.) On September 2, 2010, Plaintiffs filed the current motion to remand, arguing that significant issues of fact preclude a finding that the distributor defendants were fraudulently joined, and therefore, federal jurisdiction is improper. (Docket 44.) Specifically, Plaintiffs highlight the limited scope of the affidavits, which are based only on the affiants'

"complete review of . . . regularly kept business records," many of which are limited to six or seven years worth of sales or inventory records. (Docket 42 at 13-15.)

## II. DISCUSSION

The asserted basis of the Court's jurisdiction over this removed action is that there is complete diversity of citizenship among the parties and the amount in controversy exceeds the jurisdictional threshold. 28 U.S.C. § 1332(a). The amount in controversy requirement is not at issue, but the parties disagree as to whether complete diversity exists. The complete diversity requirement is satisfied "when no party shares common citizenship with any party on the other side." *Mayes v. Rapoport,* 198 F.3d 457, 461 (4th Cir. 1999). Plaintiffs and the distributor defendants are citizens of West Virginia, which suggests that complete diversity does not exist. However, if the distributor defendants are fraudulently joined parties, then their citizenship is irrelevant to the jurisdictional analysis, and only American Optical—whose citizenship lies in Connecticut and Delaware—may be considered. *Hartley v. CSX Transp.*, 187 F.3d 422, 424 (4th Cir. 1999).

### A. *Fraudulent Joinder*

Fraudulent joinder requires neither fraud nor joinder. Instead, it is "a term of art [which] does not reflect on the integrity of plaintiff or counsel, but is merely the rubric applied when a court finds either that no cause of action is stated against [a] nondiverse defendant, or in fact no cause of action exists." *AIDS Counseling & Testing Ctrs. v. Group W Television, Inc*., 903 F.2d 1000, 1003 (4th Cir. 1990); *cf. Smallwood v. Ill. Cent. R.R.*, 385 F.3d 568 (5th Cir. 2004) (adopting term "improper joinder" as more accurate than "fraudulent joinder"). To show that a nondiverse defendant has been fraudulently joined, "the removing party must demonstrate either 'outright fraud in the plaintiff's pleading of jurisdictional facts' or that 'there is *no possibility* that the plaintiff

would be able to establish a cause of action against the in-state defendant in state court.'" *Hartley*, 187 F.3d at 424 (quoting *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir. 1993)) (emphasis in original). "The party alleging fraudulent joinder bears a heavy burden—it must show that the plaintiff cannot establish a claim even after resolving all issues of law and fact in the plaintiff's favor." *Hartley*, 187 F.3d at 423. In fact, the fraudulent joinder standard "is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *Mayes*, 198 F.3d at 464. Accordingly, "[a] claim need not ultimately succeed to defeat removal; only a possibility of a right to relief need be asserted." *Marshall*, 6 F.3d at 233; *see also Hartley*, 187 F.3d at 426 ("Once the court identifies this glimmer of hope for the plaintiff, the jurisdictional inquiry ends.").

American Optical does not contend that Plaintiffs named the distributor defendants as an act of outright fraud. Thus, the Court must determine whether there exists any possibility that Plaintiffs will be able to establish a right to relief against the distributor defendants in state court. West Virginia law guides the Court in this determination. *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938); *see also Hartley*, 187 F.3d at 425. American Optical argues that the distributor defendants were fraudulently joined because there exists no proof that they were involved in the relevant chain of distribution. Under West Virginia law, a manufacturer of a defective product is strictly liable to a plaintiff, provided the plaintiff can prove that the product was defective when it left the manufacturer and the defective product was the proximate cause of the plaintiff's injuries. *See Morningstar v. Black & Decker Mfg. Co.*, 253 S.E.2d 666, 677 (W. Va. 1979). Additionally, "[b]ecause the manufacturer is not always accessible to the plaintiff, strict liability extends to those in the product's chain of distribution. Thus, an innocent seller can be subject to liability that is

entirely derivative simply by virtue of being present in the chain of distribution of the defective product." *Dunn v. Kanawha County Bd. of Educ.*, 459 S.E.2d 151, 157 (W. Va. 1995). In other words, for a cause of action to exist against any of the distributor defendants in this case, at least a minimal connection must be shown between one distributor defendant and an American Optical brand respirator, which Plaintiffs claim to be the cause of their injuries.

In support of removal, American Optical submitted several affidavits from employees of each of the three in-state distributor defendants—Eastern States, Crest, and Raleigh—and an affidavit from a long-time American Optical employee. (Dockets 1-4, 1-5, 1-6, 1-7.) All three distributor defendant affidavits are identical. The affidavits assert that (1) the named distributor defendant has no record of American Optical Corporation as a vendor; (2) the named distributor defendant has no record of distributing American Optical Corporation's products to any of Mr. Addair's employers; and (3) the named distributor defendant has no record of transacting any business with American Optical Corporation at any relevant time. (*E.g.*, Docket 1-3 at 1-2.) The fourth affidavit, sworn to by a long-time American Optical employee, states that "American Optical possesses no records to show that . . . Crest Supply Company, Inc.; Eastern States Mine Supply Co.; Raleigh Mine and Industrial Supply Co. . . . served as distributors of AO respiratory protection products. Further, AO has no records of ever having sold any respirators to these companies." (Docket 1-6 at 1.) According to American Optical, these four affidavits establish that Plaintiffs cannot possibly establish even "a minimal connection . . . between the non-diverse [distributor] defendants and the alleged defective respirators." (Docket 1 at 6.)

In reaching this conclusion, American Optical relies heavily on a district court case from the Northern District of West Virginia, *Degenova v. PPG Industries, Inc.*, No. 5:06-cv-00022, 2006 WL

3692645 (N.D. W. Va. Dec. 12, 2006). The plaintiff in *Degenova* was injured in a work-related accident when a four-wheel vehicle overturned. *Id.* at *1. Following the accident, the plaintiff filed suit in state court against his employer, the vehicle manufacturer, the vehicle distributor, and a tire distributor who dealt with the employer. *Id.* The action was removed to federal court, where the employer alleged that the plaintiff fraudulently joined the tire distributor to defeat diversity jurisdiction. *Id.* at *4. In holding that the tire manufacturer lacked any "minimal connection" to the allegedly defective vehicle or its components, the *Degenova* court greatly emphasized a number of affidavits sworn to by other employees. Those affidavits stated that the vehicle "was equipped with the tires and rims that accompanied the unit when it was originally supplied to [the employer] and that those original tires were not supplied by [the tire manufacturer]." *Id.* Thus, the affidavits categorically and undisputedly established that the tire manufacturer bore no connection whatsoever to the allegedly defective product.

In this case, the affidavits submitted by American Optical fail to establish that no possibility of stating a cause of action exists against the in-state distributor defendants. The limited scope of American Optical's proffered affidavits is betrayed by deposition testimony from two of the affiants: Donna Zandlo and Marshall White.

Ms. Zandlo, a corporate officer at Eastern States, stated in her affidavit that, according to available records, Eastern States had never purchased products from or transacted business with American Optical Corporation. (Docket 1-6 at 1.) The operative portions of Ms. Zandlo's affidavit are prefaced with the phrase "based upon the review of the regularly kept business records of Eastern State Mine Supply Company." (*Id.*) When deposed, Ms. Zandlo revealed that her "review of the regularly kept business records" consisted of a thirty-minute search of available computer

6

records, namely vendor lists, customer lists, and inventory data. (Docket 42-2 at 3.) Ms. Zandlo indicated that her statement about Eastern States conducting no business with American Optical was based on the fact that the search term "American Optical Corporation" produced no results in Eastern States' vendor list, which dates back to 1991. (*Id.* at 8.) She admitted, however, that she had no access to vendor lists prior to 1991, and she could not testify as to whether vendors may be removed from Eastern States' vendor lists by employees or managers. (*Id.* at 12.) Importantly, as corporate records show, American Optical Corporation ceased manufacturing and distributing respirators in 1990, when it transferred its safety line to Cabot Safety Corporation. (Docket 44-6 at 3.) Cabot and its successor, Aearo Company, continued to sell American Optical brand respirators, however. Thus, if any defective American Optical brand respirators were being delivered to Eastern States, they would have been either from the American Optical Corporation pre-1991 or from Cabot and Aearo thereafter. Ms. Zandlo stated that she did not search for either Cabot or Aearo in her vendor search, effectively missing any meaningful information. (Docket 42-2 at 8-9.) The conclusions to be drawn from compiling this information are as follows: (1) Eastern States has no vendor lists for the time period during which the American Optical Corporation was manufacturing and distributing American Optical brand respirators; and (2) Eastern States' representative has no information on whether Cabot or Aearo, which distributed American Optical brand respirators post-1990, are or were vendors for Eastern States.

      Ms. Zandlo's affidavit also states that Eastern States has never "distributed, supplied, or sold any products manufactured by American Optical Corporation to any of Plaintiff's employers." (Docket 1-6 at 1.) According to her deposition, this assertion is based on a review of inventory and sales records for respirators, which date back to 2004 and reveal that no respirators were sold to Mr.

Addair's employers during that time period. (Docket 42-2 at 4.) Eastern States has no records of sales and inventory pre-2004, nor does Eastern States keep a record of "walk-in" customers' identities when they purchase directly at Eastern States's facility with cash. (*Id.* at 24.) Additionally, Ms. Zandlo indicated that according to inventory records, of the three types or models of respirator Eastern States carries, two have been assigned "stock numbers" including the letters "AO." (*Id.* at 4.) The conclusions to be drawn from this information are as follows: (1) Eastern States has no information regarding its pre-2004 sales or inventory;[1] (2) Eastern States has no information regarding the identites of walk-in, cash customers at any time; and (3) Eastern States probably has American Optical brand respirators in its inventory or inventory records. Ms. Zandlo's deposition testimony severely undermines, discredits, and qualifies the assertions contained in her affidavit. As opposed to the affidavits in the *Degenova* case, which categorically demonstrated that the in-state distributor defendant was unconnected to the allegedly defective product, Ms. Zandlo's affidavit (when viewed alongside her deposition) merely states that Eastern States possesses no information to suggest that it dealt directly with the American Optical Corporation or distributed AO brand respirators to Plaintiff's employers. A lack of information, especially when such incomplete records are relied upon, is insufficient to demonstrate that there is *no possibility* that Mr. Addair will be able to establish a cause of action against Eastern States.

The affidavit and deposition testimony of Marshall White, the affiant relied upon to establish that Raleigh was fraudulently joined, fares no better. Mr. White's deposition indicates that Raleigh's sales and inventory records are retained for only seven years, and the company is without

---

[1] "Did you have any records prior to 2004 to look at to determine whether or not you all [Eastern States] sold respirators to any of the plaintiffs' employers? —No." (Docket 42-2 at 4.)

any record of sales or inventory pre-2003. (Docket 42-3 at 5.) Although a search of Raleigh's computerized vendor records (which, according to Mr. White, are complete through the company's origin) revealed that "American Optical" does not appear, Mr. White stated that he is uncertain whether the company purchased American Optical products from other suppliers or vendors. (*Id.* at 16.)[2] Additionally, like Eastern States, Mr. White is uncertain whether customers or vendors are ever removed from their respective lists. (*Id.* at 13.) Mr. White also stated that he did not search Raleigh's customer lists for Plaintiff's employers to ascertain whether they were current or past customers of Raleigh's. (*Id.* at 11.) In summary, many of the same problems with Ms. Zandlo's affidavit and deposition testimony pervade Mr. White's testimony, severely undermining and discrediting the assertions contained in his affidavit. As the Court has stated already, a lack of information, especially when such incomplete records are relied upon, is insufficient to demonstrate that there is *no possibility* that Mr. Addair will be able to establish a cause of action against at least one of the in-state distributor defendants.

After reviewing the relevant affidavits and depositions, it is unmistakable that there are substantial questions of fact surrounding the involvement of several of the distributor defendants. Resolving these questions of fact in favor of Plaintiffs, as the Court must, *see Hartley*, 187 F.3d at 423, it becomes clear that American Optical cannot establish that no "glimmer of hope" exists for Plaintiffs to prove their case against the distributor defendants. Accordingly, the Court **FINDS** that American Optical has failed to meet its burden of demonstrating that Plaintiffs have no possibility

---

[2] For example, Mr. White admitted that Aearo, a successor company to American Optical's safety products line, was in Raleigh's vendor lists, and stated that he "purchases from Aearo, [and] whatever Aearo sends, that's what we sell." (Docket 44-3 at 23.) Mr. White additionally stated that Blizzard's Industrial Supply was a primary respirator vendor to Raleigh, but he was ignorant to what company supplied respirators to Blizzard's. (*Id.* at 9.)

9

of establishing a cause of action against the distributor defendants. *See id.* Therefore, the Court does not find that the distributor defendants are fraudulently joined parties and, as such, their respective states of citizenship must be considered for the purpose of evaluating this Court's jurisdiction. *See Mayes*, 198 F.3d at 461.

  *B.*  *Removal Jurisdiction*

United States "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1). "[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). Generally, the party seeking removal bears the burden of showing that federal jurisdiction exists. *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994). Because removal jurisdiction is strictly construed, all doubt is resolved in favor of remand. *Id.*

Plaintiffs are citizens of West Virginia and Defendant American Optical is a corporation with its citizenship in both Connecticut and Delaware. However, the distributor defendants are all corporations with citizenship in West Virginia. Thus, complete diversity is lacking among all opposing parties. Accordingly, the Court **FINDS** that it may not exercise jurisdiction over this removed action pursuant to 28 U.S.C. § 1332(a).

### III. CONCLUSION

For the reasons set forth above, Plaintiffs' Motion to Remand [Docket 42] is **GRANTED.** The Court hereby **REMANDS** this case to the Circuit Court of Wyoming County, West Virginia, for further proceedings.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party, and a certified copy of this Order to the Clerk of the Circuit Court of Wyoming County.

ENTER: June 7, 2011

_____

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE